The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Have a seat. Thank you. Welcome to the Fourth Circuit. I particularly want to welcome and thank our good friend, Judge Moon, who is joining us by Zoom. We appreciate his willingness to do so, and though we hate he's not with us, we're glad he's joining us. We're going to hear, with this panel at least, one case, 24-16-56, Oliver v. Navy Federal Credit. Mr. Schwartz, we're happy to hear from you. Whenever you're ready. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Daniel Schwartz. I'm representing plaintiffs in this matter. The nine named plaintiffs here aren't meaningfully different from others who seek loans from Navy Federal Credit Union. Like everyone else, they submitted a prescribed set of materials regarding their creditworthiness to Navy Federal to get a loan approved. And as it does for everyone else, Navy Federal evaluated that creditworthiness using its standard proprietary underwriting algorithm, its creditworthiness evaluation process. So just to connect this to the complaint, were you just starting with paragraph 64 and are now pivoting to paragraph 67? That's exactly right. Because the question we're assessing is whether the complaint is sufficient, not whether a bunch of representations you now make to us in an oral argument are sufficient. Absolutely. As described and as alleged in paragraph 64 and 67, there is a standard set of materials given to Navy Federal, and there is a standard underwriting process that Navy Federal undertakes. Just on a factual basis, so you say there's a standard set of materials in 64, but then in 67 you say they take that information but also other information that's unspecified or unknown, and it sort of goes into the box, as I understand it. And then in 67 you explain that after that algorithm makes some determination, then and only then presumably an individual, a loan officer, decides whether to lend to the borrower and at what rate. And that's why you describe this as a, quote, somewhat automated process. Well, Your Honor, Navy Federal has not yet disclosed to us. We don't yet have. We're looking at the allegation. So you allege it's a somewhat automated process. That's right. And you describe that the application information and other information that's unspecified is put into an algorithm, and then Navy Federal, using the loan officer you talk about in 66, decides whether to lend to a particular borrower and on what terms. That's the process, this overall process that you've described. It doesn't look exactly like what you allege in the brief, but we've got to rely on the complaint. That's where we should look for the process that you've described is these paragraphs, 64 to 64. I think 64 to 68, thereabouts. That's right, Your Honor. But I will note I don't believe that we describe some overriding discretion of a given loan officer anywhere in the complaint. Well, but you say in 63, right, that there are two ways of doing this, right? One is a manual discretionary process and one is an automated process or a combination. That's right. And then in 64 you say they do a somewhat automated process. That's right. Which means a combination, right, of discretion and automation, right? Those are the two options you've given us. I'm just reading your complaint. I'm not – I understand your brief won't just tell us a different story, but that's what the complaint says. Well, Your Honor, I think what the complaint says is, certainly as it's intended to say, what the complaint says is that there is a semi-automated process. I think that's absolutely right. And what portion of that discretion is wide-ranging, what portion is very narrowly tailored with respect to those individual loan officers, is not yet known to us because we have not yet been in discovery. And I think that is evident within the complaint. I understand that the amount and nature of the discretion is unknown. I totally accept that. Okay, thank you, Your Honor. I'm just trying to understand what the process that we have is. I think it's exactly as you described. There's a semi-automated process. The amount of actual discretion that a loan officer may or may not have, we do not yet presently know because we do not know. We do not have all the details with respect to Navy Federal's underwriting policies and process. We've asked for them in discovery. We hope to get them when we go forward. Can I take a step back before we do this? Sure. And ask you a little bit about – you say in your reply brief that the district court here permanently struck your class allegations. That's right. So I don't read the rules that way, and so I want you to help me understand why you think this is permanent. So 23D2, so this is, in my view, a 23D1D order requiring you to amend by removing these class allegations. That's right. Just so I can clarify, because although Rule 23F is thrown around, this is obviously not Rule 23F. 12F. This is not scandalous, voluminous. That's not why Judge Brinkman struck these allegations, because they were scandalous or voluminous or proposed proprietary information. I agree.  But 23D2 tells us expressly that this type of an order can and may well be reconsidered and combined with Rule 16, other case management-type decisions. That's what 23D2 tells us. Sure. And so, again, sort of why then do you claim that this is a permanent denial of class? It doesn't strike me at all that that's what Judge Brinkman was doing. She seems to be exercising the standard sort of like case management-type discretion that Rule 23 provides her. I don't think I agree with that, Your Honor, because to strike – So tell me why. I will. I will. To strike class allegations under 23D2, the court must find as a matter of law that there is no possible set of facts that could be elicited. I don't think that's true, and I don't know where you're getting that from out of the rules. The rules don't seem to tell us that at all, right? So the rules seem to say that this is like a case management-type discussion, right? So the district court, Judge Brinkman, is able to evaluate the allegations you've made and say in her discretion, right, whether this is a case that ought to go forward with class discovery and the class action process and all the challenges that come with that at this point or not. And if information develops that allows you to provide more specificity or allows you to explain how a single policy as opposed to some broad process applies, then D2 tells us that the court should reconsider that. Although – But that's part of the district court's broad discretion to control the manner of litigation before her court. But what that I think effectively can do, Your Honor, what I think it effectively can do is cut out the possibility of eliciting the very discovery that would show that class litigation is plausible here. So that is entirely possible that when a district court judge exercising their discretion provides limits on – effectively limits on discovery, that that might make your life harder. I totally get that, right? That's a reasonable limit. Anytime a district court judge makes case management decisions, those are like – can have consequences. I totally acknowledge that, but that's why we give district court judges a great deal of discretion in the class action context and otherwise to run their own courtrooms and manage the process. But if I may, Your Honor, what that could do is it could allow a district court to effectively eviscerate, take away the ability of claimants to prove up any Rule 23 cases if they think at the outset of a case that it is ultimately unlikely for a class to be certified down the road. And that's why we're here, and we've given you an appeal under 23F to evaluate whether the district court judge abused its discretion in making that judgment. It's not that you get no review, but this is not a question about whether it would be impossible for something to happen, but instead whether Judge Brinkema, who is not new at this process by any stretch of the imagination, is entitled to sort of use her discretion to manage the process. Well, I want to point out, however, Your Honor, that under any standard, whether it's a de novo review or an abuse of discretion review, the striking of class allegations here, given Judge Brinkema's finding of a plausible disparate impact with respect to the individual applicants, would represent an abuse of discretion. So if that decision was right or wrong, it matters not to us. We don't defer to that decision. Judge Brinkema might have gotten the motion to dismiss wrong. That's totally fair. But we don't have the authority to review that. We just review this question. Precisely, Your Honor, and precisely. And having found, having found that the… Don't make findings. I'm ruling on motions to dismiss, right? Concluded? Thank you. Better word. Having concluded… But do you think this court has to accept that conclusion is correct? I think the court doesn't necessarily… I don't think the court's evaluating whether that conclusion is correct. I think the court is starting from the premise that that conclusion is correct.  This court is? Yes, because Judge Brinkema's order saying that under no set of circumstances could a plausible class claim survive is in fundamental… Tell me where in her order she said… I didn't see that in her order. You just quoted her order saying something that I don't think she said at all. I should say her order striking the class allegations… Did not say that, right? No, of course it didn't say that. What it said, Your Honor, is that it was striking the class allegations because, quote, the… Excuse me, I can pull up the exact language, but the process is too varied. That's what she said. That's not exactly what she said either. I can pull it up. I understand that you want to rewrite your complaint, but one thing we definitely can't do is rewrite the judge's order, right? Your Honor, I agree I should say the exact language in her decision. In fairness to you, does Judge Brinkema not say at page 95 of the JA, this is not a case that is appropriate for class certification? Does she not say those words at the hearing? She did. She did. She did. That's what she said. And what I'm saying is that that finding right now is in fundamental tension. But what she said is that this is for judicial efficiency, right? That you haven't shown sufficient commonality that I'm going to strike them for judicial efficiency. That's the context in which she's sort of saying this. I don't think she spoke those words either, Your Honor. I don't think she said because of a want of commonality. In her decision itself, and if the court will grant me just one moment, I'm going to pull up the exact language right now. Well, while you're there, she also says at JA 98, this can't possibly be an appropriate case for class certification. Yes, she did. Thank you. That's exactly what she said. At the argument. At the argument. Right, and that's the judgment that she's making under 23D1D. What she said in her decision, her memorandum was, and this is on JA 122, because the circumstances of each plaintiff's loan application process are so varied and to promote the efficient use of resources and to streamline the claims to be considered in this civil action, the court will strike the class allegations and allow the nine plaintiffs to proceed. Now, I will note that that so varied evaluation did not come out of a reading of the complaint. It did not come out of an argument made by opposing counsel. It was Judge Brinkham's own fact finding, her own assessment, and what I am saying to this court was that that was an inappropriate evaluation, and it was also in fundamental tension, fundamental tension, with Judge Brinkham's finding that the plaintiffs had stated a disparate impact as to themselves. I have one question on that. Yes. Again, you're positing that we have to posit that Judge Brinkham was right to not grant the motion to dismiss in its entirety, and I'm not sure why we have to posit that. Let me just give you a reason I think that. You could litigate this case all the way through final judgment. Okay, we could reverse right now. She could certify a class. Yes. You could litigate this case all the way through to final judgment, and we could on appeal say, actually, the district court should have granted the motion to dismiss the entire complaint. Right? We would owe her no deference at all on that question. I suppose that's true. So why do we owe her deference now? Why would we owe her deference now on a question that we wouldn't owe her any deference later? Because the fundamental question that I think we are facing, and perhaps we are going in circles with this, Your Honor, but I think the fundamental question that we are facing is whether, given her assessment of the case, whether it is appropriate for her to find, and I do contend, Your Honor, that there is implicit in her order of finding and explicit in her statements, implicit in her order of finding that no amount of discovery would allow a plausible case.  Absolutely. This is the top of 46. It's paragraph 67. How much work are the words, it's proprietary algorithm singular, doing? So what if it had said it's proprietary algorithms? I don't think it's doing a whole – I don't think the singular versus the plural is doing a whole lot. I mean, I think whether it's a single – It would be worse for you if it said algorithms, right? I mean, perhaps, although then we're getting into a bit of a semantic – Would it be plausible to think that they're doing the same thing for all four different products? I mean, if you said one, we know, like, they would be violating federal law because they have to take things into consideration in some but not in others. And so, like, that would be odd to think that it is actually a single algorithm. I have two responses to that, Your Honor. Number one is that for any given product, there's going to be a credit evaluation process, which could very well be a singular credit evaluation process for any given applicant. And number two, that differential between types of loan products could be – In the same way that if, like, say you want to work for the federal government in an enormous variety of jobs, you have to fill out an SF-85. That's exactly right. That's exactly right. Thank you, Your Honor. And the second is that difference would, I think, be cause for creation of subclasses later. If it turns out that applying for a 30-year loan is evaluated absolutely in no way like applying for a HELOC or applying for a cash-out refinance, then we could trim the classes. We could create subclasses. We could do something like that. It is not cause for tossing out everything. One thing Judge Brinkman – Can I just ask one question, and then I want to be sure to ask Judge Moon if he has questions? What do I look for the authority is that if the class was improper because it lacked commonality, that the appropriate remedy is to permit you to create subclasses, so we would reverse the district court because you could later create subclasses? I guess I'm having trouble understanding that argument. If it's not common, but you may be able to create common by creating subclasses that look alike? I think we – Why is that? That's the answer you gave. I'm curious what we did there. I think, Your Honor, that what we said is – and this is quoted, I think, towards the end of our reply brief – is that the court has in its discretion the ability to create subclasses, to trim – The district court, right? The district court, absolutely. Not this court. And right now, this court is not evaluating whether there's a proper class certification. It's not evaluating whether the commonality has been met yet. It's evaluating whether it's appropriate to strike class allegations from the face of the complaint, from what's on the face of the complaint. Judge Moon? I apologize because we've not given you much of a chance to weigh in here. Well, you've asked most of the questions. I would like to know why you just focused on 23B1. It seems to me that under 23B3, the questions here of the class members do not predominate over any other questions affecting the individual members. And it seems to me that what she's focusing on is that for these plaintiffs to get relief, you're going to have to try each case separately. It's just not a good case for class action because you have so many – no decision is really going to resolve anything for most of the plaintiffs. May I respond to that? I see I'm well into my overtime. You can respond as long as Judge Moon asks you questions. You can keep answering. All right, all right. I think, Your Honor, that again, we're just not there yet. We don't yet have the information to know whether those individual differences between plaintiffs who apply for a 30-year mortgage will ultimately predominate here. You know they all – from your complaint, you know that all of them had suffered different types of injuries which would give them different verdicts insofar as their damages are concerned. You'd have – I mean, one judgment, well, you're not going to just be able to divide up a sum of money among these people, and it's just so many combinations and permutations that it would just have to be decided pretty much the way she seems to have decided the case ought to be handled. I don't think that's right, Your Honor, because we don't yet know. We don't yet know what the common – whether this common underwriting process is having the disparate impact across the class, whether it's only impacting this – we don't yet have that. We only have our allegations on the face of the complaint. Isn't that in Twombly? Like the fact that you don't have the information of the agreement yet isn't an answer for a failure to plead it, right? I get that that's – it's hard, right? I get that it's hard in this Twombly world to make these allegations, but you don't get just – you don't just get to say in Twombly, man, if you just give us discovery, we're going to find the email that shows the agreement, right? And we're not asking for that, Your Honor. What we've done is we've shown statistically – But then you just keep saying we don't yet have the information. Like that's not an answer to a pleading failure. As Judge Brinkheimer herself put it, the statistical disparities that we were able to put forward – this is when she was talking about the individual disparate impact claims. The statistical disparities reveal a disparate impact among non-white loan applicants and the underwriting algorithm and process. The thing that all of these different pieces of input that you put in, that it then spits out an answer for Navy Federal, that that underwriting algorithm and process is alleged to have caused that disparity. That is the essence of disparate impact litigation. And then we have – Do you have some time left on reply? We'll be happy to hear from you.  I want to add one other point. I have one question because it relates to a question I'm going to ask your colleague on the other side. Didn't you also plead a B-2 class? Thank you, Your Honor. Yes. That was the next point I wanted to make in response to that. We pled a B-2 class. So if it turns out – it could very well turn out that an injunctive relief class is where we go and a B-2 class is ultimately the most appropriate here. Thank you, Your Honor. Judge Moon? I'm sorry. Before Mr. Moon comes up. Well, I mean, you can get – I agree that you pled the injunctive relief, but it seems to me you cannot have the – it's obvious from the allegations that you cannot recover the money damages at the same time because all these – you have all these individuals that will have to prove their case separately, that they were injured by the algorithm, and that they have – what their damages are. And that's – you're familiar with the Pilgrim case, and the Sixth Circuit said the problem the plaintiff had there was they could not even proper what would come up – might come about in discovery to satisfy that problem. Well, Your Honor, I think there are two points that could be made there with respect to the question of whether we could ultimately prove damages. And in the end, if there's a B-2 – if there's a B-2 case and that's ultimately how the class gets certified and we go forward, then there won't – that won't be part of the question that we're facing. And with respect to the Pilgrim case, I think we absolutely can proffer discovery regarding whether there is a disparate impact that is caused by this loan algorithm and whether there's a less discriminatory alternative. Whether there is – we have experts lined up who are going to come in and talk about how looking at the way in which Navy Federal evaluates its loan application process, looking at its process and policy, it could deter – there could be another way of creating that algorithm. Well, yeah, that would maybe create the liability, but then you seem like you're running into the face of a Wal-Mart pre-Duke and you've got all these – and have all these individual cases. I don't think so. I don't think – oh, I'm sorry, Your Honor. I didn't mean to cut you off. Well, I've talked too long. Not at all. Not at all. Shall I respond to the Wal-Mart v. Dukes question or – You're welcome to. Okay. So I don't think Wal-Mart v. Dukes is quite the same situation here because in Wal-Mart v. Dukes, the real core problem was that the entire B-2 class was based on the notion of this wide-ranging discretion amongst the various Wal-Mart stores and essentially said that the act of granting too broad discretion was the problem. We're arguing something somewhat to the opposite. So it seems like to me you're actually arguing the same thing as Dukes because what Dukes says is you have this disparity, this statistical disparity, and what you can't do in Dukes is allege the process as a whole is the policy that we're alleging causes that. So that's what Wal-Mart does. It does it also on discretion, but it says you can't allege the general policy of hiring as being the policy that creates it. And you've alleged basically the same thing. You have this significant statistical disparity, at least with respect to some groups of people and some groups of products. And then your answer to that in the complaint as I read it is that the entire process, what you call the underwriting process, is what causes this problem. And that type of sort of generalized policy is precisely what we said in Stafford is not acceptable for a commonality inquiry and what the Supreme Court in cases like Ward Cove and Watson and Dukes tells us is not acceptable for disparate impact cases. Your Honor, I have to respectfully disagree. I'm sure you do, but why? It's for the following reason. What we are saying here is that there is a uniform means of evaluating creditworthiness, the algorithm, as Judge Hyten helpfully pointed out, the algorithm. And it is that algorithmic decision-making, the uniform means of evaluating creditworthiness that we are saying is defective here and causing a disparate impact. And that is fundamentally different. That is a species of centralized decision-making that is fundamentally different than the broad policy that you're talking about from Dukes, which was allowing far too much discretion to local decision-makers. And that is a fundamental difference. Thank you, Counsel. We'll hear from you in a little bit. Mr. Volchuk, we're happy to hear from you too. May it please the Court, Daniel Volchuk for Navy Federal Credit Union. Your Honors, the only question in this appeal is did the complaint plausibly allege that the proposed class satisfies Rule 23? And I want to explain why Judge Brinkma answered that question correctly, starting with some of the points that came up. And when you say correctly, I read your entire brief as understanding Judge Brinkma as having denied class certification, right? Not maybe I'll come back to it later if they come up with some new facts. But I guess I would say, Mr. Volchuk, would you want to walk into Judge Brinkma's courtroom and propose that you'd like to replete the class action allegations? Well, several responses, Judge Huygens. First of all, she certainly struck the class allegations. That was the motion that we proposed. Now, to Judge Richardson's point, someone can come back on 23-D and say if the evidence is developed, that decision can be revisited. A litigant can also, of course, always file a Rule 15 motion to amend. Now, this is the fourth class action complaint that they have put in, so they would certainly, I submit, be within Judge Brinkma's discretion to deny that. But let's be clear. There is no question in this appeal about whether her denial of leave to amend was an abuse of discretion. There is no argument in their briefing that she should have granted leave to amend. They make a different argument. It seems slightly different, but it's very different. And let me explain why. The argument that they make, and you heard it again this morning, is she should have created subclasses or she could create subclasses later on. That is very different. That is saying let us pass Rule 12 now. It's akin to in a 12B6 situation, the complaint is dismissed, the plaintiff says, well, or the motion to dismiss, and the plaintiff says, Judge, even if we haven't pleaded a plausible claim, don't dismiss, let us go forward. You can always fix it later. You don't get to move past Rule 12 unless you have pleaded a plausible claim. And it also goes to their point about discovery. They did say again and again this morning, Judge Richardson, we need discovery, we need discovery. You don't get discovery unless you get past Rule 12. And that makes sense because as a plaintiff, you don't need discovery. You get the benefit of it. We're just combining two things. I heard plausible Rule 12. And when you say plausible Rule 12, the one of the fewest things that I'm certain of is someone who's taught CivPro for many years. When we're talking plausible Rule 12, that's de novo review. Anytime I hear the words Rule 12 or plausible, because that's Twombly and Iqbal, we agree that a Twombly-Iqbal dismissal is reviewed de novo, right? Yes, and I agree that Judge Brinkema's decision to strike the class allegations to strike this complaint is reviewed by this court de novo. But that is a different question. Wait, what? I'm sorry. No. First, you can't agree to the standard of review. Second, you're just wrong. So 23D, this is not a 12F dismissal. Your colleague agrees with it. You can assume that this doesn't have anything to do with 12F because none of the characteristics of 12F are met here. It's a 23D1D order, and that is reviewed for an abuse of discretion. It's not a de novo review because we're not simply asking whether it's plausible. That's not what 23D1D asks. That's not what Rule 23 asks. In every context in reviewing a Rule 23 decision, we have reviewed it for an abuse of discretion. I'm not aware of any court that's reviewed a Rule 23 decision de novo. And so you're welcome to sort of go down the road, but help me understand why you think a Rule 23D1D order, which is what we have here, is reviewed de novo. So Judge Richardson, I am certainly not going to be in the position of arguing for a less deferential standard of review when I am defending the district court's decision. If the court views this as a 21D1D, so be it. The parties have briefed this as if the question is, is the complaint plausibly alleged satisfaction of Rule 23? And I don't think— And you did that—I take it you did that because you think it's a Rule 12F order? I mean, why—help me under—just so that maybe—I don't want to get it wrong, right? And so you're an officer of the court. You're good at this, right? So you seem to assume that this is a Rule 12 question, right? Why? Why is that? Well, you're making me uncomfortable here, Judge Richardson, but that's okay. But you're an officer of the court, right? Help me understand, like, why in the world would we think about this as a Rule 12 question? So we filed a motion to dismiss and a motion to strike. Those are in the Federal Rules of Civil Procedure put under Rule 12, and we have cited cases that analogize a Rule 12F motion to dismiss class— or to strike class claims as analogous to a 12B6. I think you get to the end—the same end result, whatever the court decides, is the proper procedural framework. The point is, this complaint— So do you think that the district court properly found that one of the four reasons, like, that it's scandalous or frivolous or— I mean, the 12F standards, like, don't remotely seem applicable here. If we're really reviewing this under Rule 12, like, you face an impossible hurdle, right? Because, like, one thing I can say is, like, they're not sufficiently scandalous that we need to strike them, right? They're not, like, inappropriate pictures or things, right? We're in a very different world than what 12F seems to be. I agree with that, Judge Richardson. Courts have, through path dependency or otherwise, looked at these sorts of motions, motions saying this class claim cannot proceed forward through the rubric of 12F, notwithstanding the misfit between the language of 12F you just identified and the substance of the allegations here. I don't mean to get sidetracked because, as I say, I think you get to the end result, the same end result, no matter what framework you look at it in. Even under abusive discretion, it is necessarily an abusive discretion to make an error of law, right? Correct. And so if we were to conclude that you can't strike class allegations that meet the Twombly-Iqbal standard, it would be an error of law to think that you otherwise could, right? I'm sorry. I missed that question. If we think that you cannot strike allegations at the pleading stage that are sufficient under Twombly and Iqbal, that that's not permissible, then a district court who did that would have committed an error of law, right? Yes. And we also reviewed de novo whether allegations are sufficient under Twombly and Iqbal. That's right. This is why, as I say, ultimately we are getting to the same, I think, standard of review, certainly to the extent the court is agreeing that the question is whether a plausible class claim has been pleaded here. And the answer is— But another way of taking Judge Hyten's question is the first sentence he said there is if you cannot strike if it doesn't meet Twombly is just to say if we apply Rule 12 instead of Rule 23, then it's de novo. Correct. Those are just the same ways of saying it, right? That if we apply Rule 12, then it's de novo. If we apply Rule 23, it's abuse of discretion. And this seems to me to be a 23d1d order, not a 12-out order. And I think you get to the same result either way. The bottom line is this complaint does not comply with Rule 23 for a number of reasons. And let me start with commonality and Walmart versus Dukes. The Supreme Court explained in Walmart that commonality requires the plaintiff to show that the class members, quote, suffered the same injury, end quote. That's page 350 in the U.S. Report's opinion. It goes to what I think Judge Moon was talking about in the topside argument. The complaint here expressly alleges varying injuries. Some class members are alleged to have had their applications denied. Others alleged to have had them granted but on less favorable terms than plaintiffs say they should have been. And still others alleged to have had them granted not on less favorable terms but more slowly than plaintiffs say they should have been. So can I ask you the paragraph 64, 67 questions I asked your friend on the other side? I agree Walmart says you have to have a common injury, but it says you have to have one common injury, not that you have to have all the same common injuries, right? And so why can't I read this complaint as saying, at least potentially saying, every applicant has to fill out this form, that's 64, and then 67 says the information for everybody is at some point fed through a proprietary algorithm. That's the carryover from 45 to 46. And then the argument, sorry, just the argument is that algorithm has a disparate impact on race, which means that every decision is infected by a step in the process that discriminates, that has a disparate impact based on race. So I want to be clear, Judge Heitens, whether the complaint plausibly alleges that the source of the injury is a single policy and whether there is a single injury are two different questions. So I hope to have a chance to come back to the Walmart common injuries question, but to answer your question about a common policy, our position is that the complaint, unlike their briefing, as I think Judge Richardson was articulating the contrast, does not allege a single policy, and if it did, and I'll explain why, if it did, that would not be plausible. So the complaint is read as a whole. Now, if you look at the commonality paragraph, paragraph 249. Oh, no, I know why you want to talk about the commonality paragraph. Then I'll come back to these paragraphs. Paragraph 67 is talking about a single applicant. So it is talking about a single algorithm. Once Navy Federal has deemed an application complete, it runs the data from the application. Of course, we are not disputing that for each individual applicant, or at least that it's been plausibly alleged. You're not conceding it's true in the war. Thank you very much, that there is a single algorithm. But the question is, is there a single policy applied across all of these very disparate class members? The answer is no, number one, because of the reasons I mentioned a moment ago. Paragraph 249 refers seven different times in the plural to algorithms, processes, policies, and one other that I'm forgetting at the moment. And it's not just the commonality paragraph. The complaint refers 24 times, including in two different headers, to Navy Federal's policies plural. And the only time that it refers to a singular policy, excuse me, practice. If I said policy, I misspoke. Practices, plural, two dozen times. And the only time it refers to a singular practice is when it uses the phrase pattern of practice, which is a Title VII, part of Title VII jargon and doctrine. So we are not cherry-picking. We are not engaging in some sort of gotcha trap. They are the masters of their complaint, but they did not allege a single policy. And if the complaint were read to allege a single policy, it wouldn't be plausible for the reasons that I think Judge Richardson was getting at in the topside argument, which is that, well, there are a number of reasons. But number one, as I mentioned a moment ago, there is disparate types of injury alleged. They have not explained. And first of all, let me just cut to the chase for a moment. There is no response in their reply brief to this argument about why, if they pled a single policy, it is plausible. The only thing they say is what you heard again this morning, this notion of an inconsistency in Judge Brinkema's opinion. There is no inconsistency. And then I'll get back to the implausibility. Well, how about my SF-85 example? I'm sorry, Judge Huygens. Can you give it to me again? Sure. Virtually every federal civilian – well, thousands if not hundreds of thousands of federal civilian employees across wide swaths of the federal government have to undergo some sort of hiring process. Virtually everyone of them has to fill out a form called an SF-85. If the argument was the SF-85 has disparate impact based on race, you would have a common question, irrespective of whether DOD, DOJ, the Department of Interior do all kinds of other stuff as part of their hiring process, because every single one of those folks has to fill out the same form that, according to these hypothetical allegations, has a disparate impact. But here, there is no single policy that could be plausibly alleged to apply. Well, again, so that goes back to your point about 67. I was saying that's my point about 67. And I take your point that 67 – I take your point about an applicant. But putting that part aside for purposes of this question, why wouldn't that be enough if a complaint said that? I mean that could be enough to allege that the SF-85 is the same – if it causes – but you don't have a – How would it cause? Exactly. In Dukes, they all filled out the same application too. There's no plausible way to imagine that an application has caused a disparate impact. Yes, I took Judge Hyten's question to assume that, and I didn't want to fight the hypothetical, but I think you're exactly right, Judge Richardson. And here, to go back to the plausibility point, they talked about – I talked earlier about the varying injuries. They have not explained how a single policy uniformly applied could plausibly have produced these different injuries. Likewise, the size of the alleged disparate impact in the complaint and the sources that it incorporates, the size of the alleged disparate impact varies across products, and they have not explained how it is plausible that a single policy uniformly applied would have resulted in these sorts of variations in the disparate impact. So there's not a single policy. It's alleged, and it would not be plausible if it were. Now, I do want to finish the Walmart versus Dukes point. They expressly allege varying injuries, so commonality is not plausibly alleged, just like in the Falcone case on which Walmart repeatedly relied. The Supreme Court held there that the district court had erred in certifying a class because of varying injuries. Some class members had been alleged – some class members had not been hired by the defendant company, and other class members had not been promoted by the defendant company. And the Supreme Court said that doesn't work under Rule 23. And, Your Honors, just as their reply brief does not respond at all to the argument about plausibility of the single policy if it were alleged, their reply brief never cites Walmart, even though we cited it over a dozen times more than any other case because it is so central as to why Judge Brinkman's ruling was correct. And it's not just that they don't cite the case. There's no answer in their reply brief to this independent problem of varying injuries being alleged. Can I ask you, has this court ever said you can strike class action allegations at the pleading stage? Yes. In Goodman v. Schlesinger – well, I don't want to overstate it, so let me spell out the answer a little bit. My impression was no. So here's exactly what happened. In Goodman v. Schlesinger, the court, as the plaintiffs point out in their reply brief, reversed the dismissal of class claims. It was pre-discovery, so it was at the Rule 12 stage. But the court said it was improper to strike them because we, the Fourth Circuit, this court, we cannot say that certification is, quote, inappropriate as a matter of law. That's page 1332. Which, again, sounds like the Rule 12 standard, right? Yes. I'm sorry. I may have misunderstood your question. I thought you were saying striking Rule 12. No, no, no. But I'm saying have we ever actually affirmed a decision that did that? As a 12-F motion to strike, I don't have a case to that effect. Have we addressed it under Rule 23d1d? This has not come up very often, Judge Richardson, to my knowledge, certainly in this court. But we have cited, for example, we cited a case from the District of Maryland that cited Goodman v. Schlesinger that specifically talked about this, cited other cases from various circuits, including the John case from the Fifth Circuit. All these cases recognize, yes, 12-F is not exactly the right fit, but it is a Rule 12 motion, is essentially a motion to dismiss. And I don't want to get in Judge Richardson's crosshairs again. I do not mean to fight this being a Rule 23 order if that's what the court deems inappropriate. But either way, you get to the same place because there was no abuse of discretion here. I do want to talk very briefly about predominance because it came up in the topside argument, Judge Moon's questions. That obviously is sort of commonality on steroids, a stricter version of the commonality question. So for all the reasons we've articulated, if the court nonetheless were to think there was a common – the commonality standard has been satisfied, at a bare minimum, the predominance standard would not be satisfied. But that doesn't help you about a B-2 class, right, because B-3 doesn't apply to B-2 class. I was about to say the class could not move – the case could not move forward as a B-3 class, but our principal submission, of course, is that it should not move forward as a class action at all. I'm happy to take any further – So if that was the only argument we agreed with you on, then we would have to send a B-2 class back, in essence. If that is the only argument, we have our typicality argument that we also haven't addressed. I don't want to tax the court's patience. But correct, if the court agreed with us on one-and-one argument only predominance, it would go back as a B-2 class. Unless the court has further questions, I ask the court to affirm. I've got a question since you're here. So I've got sort of just a macro question that I'm struggling with a little bit. When we sort of ask this question, what the policy is, the Supreme Court in Watson and Wards Cove and Dukes says that you can't allege a generalized policy. It has to be specific. This is sort of the point we make in Stafford, too. But that perpetually sort of raises the level of generality problem, right, because we can allege a policy at a variety of levels of generality, from the hiring policy as a whole all the way down to a very specific input. Do you have, like, insight into how I ought to think about or wrestle with that level of generality problem? Only in the sense, Judge Richardson, that I think the Supreme Court in cases like Walmart has been very clear that, look, there has to be some bite to these requirements. Now, for example, it was talking about Rule 23, commonality. You can't just say literally, well, there's any question out there. Of course, there were common questions in Walmart. Did all the women work for Walmart? Yes, they did. That wasn't enough. So the Supreme Court has made clear it has to be something that ties the class members together. So I don't have much beyond that in terms of the correct level of generality. The allegation here is, of course, a single underwriting policy. In theory, could that be enough? Perhaps it certainly is not here for the reasons that we've articulated. Thank you. Before you sit down, Judge Moon, do you have anything for Mr. Voldemort? No questions. Thank you. Thank you, Your Honors. Your Honor, I know I went way over the first time. Do I still take five? You'll get at least some of that. All right, all right. I want to first answer a question that Judge Richardson raised in the very beginning, or in the very beginning, during my opening. Judge Richardson asked for any authority about the ability to trim classes as opposed to just sending back. I just want to point the Court's attention to Messner v. North Shore from the Seventh Circuit, that 669F3D802. And one thing the Seventh Circuit stated in that, which, of course, was a fully briefed class certification motion following discovery, in reversing was that courts can and often should, excuse me, problems from class definition can and often should be solved by refining the class definition rather than flatly denying class certification on that basis. And so that takes us to what we respectfully suggest is one of the core problems here with Judge Brinkman's order. One thing she said in her discussion discussing the forthcoming memorandum of law when we met in court was that this was seeking to class apples, oranges, bananas, and pears, four different kinds of fruit. Respectfully, what we could in theory get to would be a subclass of apples, a subclass of fruit, a subclass of bananas. The solution is not to toss all the fruit out of the window. Now, I've extended the fruit metaphor long enough, so I wanted to hit— And your theory there is that we would find it's an abuse of discretion for Judge Brinkman not to have rewritten your complaint? No, Your Honor. I guess I'm— No, Your Honor. I understand. Maybe you'd have had a better argument if you had alleged sort of like apples and bananas as different classes. But it's a little hard to say that Judge Brinkman was responsible for rewriting your complaint. No, Your Honor. What I'm suggesting is that it's an abuse of discretion for Judge Brinkman to rule that no possible class case could possibly go forward because of a potentially overbroad class definition if discovery ends up bearing out that we do indeed need four subclasses, even though our allegations at the outset are there was a problem with the fruit. Right? There was a problem with the fruit. Our allegation is everybody was deemed a greater credit risk because of Navy Federal's underwriting policy, its means of evaluating creditworthiness, which applied to all the fruit. Now, if it turns out we were wrong, then when we get to class definitions— So a big part of your friend's argument was to point out that in your reply brief you ignored their duke's argument, and I will note that we are two and a half minutes into your rebuttal, and you are once again ignoring their— Thank you.  To give you a chance for me to not draw the adverse inference against you—  Please do not draw that adverse inference against you. I will be very happy to turn right now to Dukes. One thing that my friend Mr. Volchok mentioned is that there has to be the glue that ties something together. That's the essence of Dukes is that the plaintiffs were not alleging this kind of common glue tying the class together, and plaintiffs here do. They allege a single means of evaluating creditworthiness that plaintiffs argue is flawed. That's the glue. But in Dukes the single means was discretion. No. Well, in Dukes the single means— That was the allegation. The single means was discretion. The difference here is that the single means is an actual output versus the single means being discretion that's different for everybody. Not discretion by one decision maker. Not discretion by one decision maker. That's exactly right. And here there's one decision maker. There's Navy Federal. The difference was the allegation was that it was—the disparate impact was to disperse this discretion. Right. And that's what the court said, no, that doesn't fly, right? Right. That's exactly right because of the dispersal. Here there is no allegation of dispersal. Here there's an allegation that there's a single way of evaluating credit risk, which is Navy Federal's algorithm of evaluating credit risk. That's centralized decision making. That is the opposite of Dukes. Dukes was about decentralization of decision making having an adverse impact. That's not the argument we make. There is no argument that the—if we had made the argument, let me put it this way, just to argue the counterfactual, if I may, Your Honor. If we had made— Before you do that, can you address our decision in Stafford, sort of this same—which I think goes to the same idea, right, which is like you don't get to sort of assert these sort of broad, generalized areas. Like the algorithm as a whole, the hiring policy as a whole, right, that you have to be specific in order to show commonality? Well, I think the difference here is we are being far more specific than what was occurring in Stafford. What we're describing here is effectively the computer program that Navy Federal uses that accepts a whole bunch of standardized inputs as described in No. 64. There's nothing like that in— Just a factual question just to make sure that I'm reading it correctly. In your complaint, you make a reference to zip codes and— That's right. —prior employment positions, but you have not alleged that that is the policy, right? You're not—you're saying that might be, it might not be, but you're not alleging—in other words, it might look different if the complaint said, the policy here that creates a disparate impact is the consideration of zip codes by Navy Federal. That's not the complaint you— Well, we don't have Navy Federal's proprietary algorithm, right? We don't know. So, for instance— Right. You don't know that. We don't know. This is the—  We don't— To find out the agreement from Quambly through Discovery. No, no, no. I think there's a fundamental difference here because here we have an output, right, that's having a disparate—where there's far, you know, large disparities in racial lending, right? And we have the inputs. What we don't have is the computer program in the middle. And part of what could—when you create a less discriminatory alternative, you look at that computer program and you look at the way they're weighing the inputs. For instance, let's say they are saying 80 percent credit score, 10 percent something else, and that could have a less discriminatory alternative. Judge Moon, sorry, I don't want to leave you out. If you've got questions— No questions. No questions. Judge Heintz, you good? Thank you, counsel. We certainly appreciate your arguments. We will come down and greet counsel, and then we're going to take a recess before we pick up with our second case. Thank you, Your Honor. This court will take a brief recess.
judges: Julius N. Richardson, Toby J. Heytens, Norman K. Moon